# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | Chapter 13 |
| ) | Bankruptcy No: 17bk33186 |
| Felicia Williams, ) | |
| ) | |
| Debtor. ) | Judge LaShonda A. Hunt |
| ) | |

## MEMORANDUM OPINION

This matter is before the court for ruling on an objection to confirmation by creditor Ford Motor Credit Company LLC ("Ford"). Ford asserts that the Chapter 13 plan proposed by debtor Felicia Williams ("Debtor") fails to provide for equal monthly payments on its allowed secured claim as required by section 1325(a)(5)(B) of the Bankruptcy Code ("Code"). 11 U.S.C. § 1325(a)(5)(B). The parties have briefed the issues and presented oral arguments. For the reasons that follow, Ford's objection is sustained.

## BACKGROUND

Debtor filed for Chapter 13 bankruptcy protection on November 6, 2017, and listed in her petition and Schedule D, a secured debt owed to Ford for a 2016 Ford Fusion motor vehicle with 25,000 miles. (Dkt. #1). Debtor also filed a Chapter 13 plan that same day, in which she proposed 60 monthly payments of $785 to the trustee (Dkt. # 2, Section D.1), and payment of Ford's secured claim totaling $23,185, at 7% interest and a fixed monthly amount of $459.09, (Dkt. #2, Section E.3.1(a)). In her initial plan, Debtor directed the trustee to disburse $459.09 each month to Ford as pre-confirmation adequate protection (Section G.1).[1] (*Id.*) She further estimated attorney's fees

---

[1] 11 U.S.C. § 1326(a)(1)(C) requires debtors to begin making payments in an amount "that provides adequate protection directly to a creditor holding an allowed claim secured by personal property" within 30 days of filing the plan. The general practice in this district is for the debtor to submit the necessary funds to the trustee, who then tenders

of $3,800 (Section E.4). *(Id.)* Section F of this district's required model plan[2] sets forth the order of priority for trustee disbursements—secured claims in Section E.3 are paid at a higher level than attorney's fees in Section E.4. *(Id.)* However, Debtor sought to change that payment scheme by adding a special term in Section G.2, allowing the trustee to pay her attorney $246 per month, at the same priority level as Ford. *(Id.)*

Within days, Ford objected to confirmation, challenging the interest rate as insufficient and concurrent payment of attorney's fees with its secured claim as potentially depriving Ford of adequate protection and resulting in unequal monthly payments. (Dkt. #15). In response, Debtor filed modified plans that deleted both provisions in Section G and reduced Ford's monthly amount, first to zero dollars at 7% interest (Dkt. #20, January 4, 2018 Plan), and then to $300 dollars at 7.5% interest (Dkt. #24, January 9, 2018 Plan). Debtor amended the plan again on January 19, 2018, this time reducing the monthly payment to zero dollars at 7.5% interest, and adding two new special terms in Section G—to pay Ford $275 each month beginning February 2018 and to step up those payments to $741 each month upon completion of administrative expenses, including attorney's fees. (Dkt. #26). In essence, the Debtor's new proposal flipped the script from giving Ford a higher monthly amount ($459) and her attorney less ($246), to allocating a greater portion to counsel first, and paying more to Ford later in the plan term.

Consistent with her plan, Debtor responded to Ford's objection on January 19, contending that equal monthly payments to secured creditors need not begin immediately after confirmation and that accelerated payment of attorney's fees is allowed so long as Ford receives monthly

---

pre-confirmation payments directly to secured creditors. *See* Bankr. N.D. Ill. Standing Order "Chapter 13 Pre-confirmation Adequate Protection Payments," dated Aug. 15, 2005.

[2] At the time of filing, the local Chapter 13 Model Plan was the appropriate plan to be used by Debtor. Cases filed or converted to Chapter 13 on or after December 1, 2017, must use Official Form 113 (Chapter 13 National Plan).

2

adequate protection payments, which she calculated to be $275. (Dkt. #27). The court ordered Ford to file a reply by February 7, and it did so, arguing that the plain language of § 1325(a)(5)(B) is clear about equal periodic payments beginning at confirmation, not a later date. (Dkt. #36). The City of Chicago ("City"), a non-creditor in this case, moved to file an amicus brief in support of Ford's objection, which the court denied, citing the absence of any statute or rule providing for these filings in pending bankruptcy cases.[3] Ford then orally moved to adopt the City's arguments as its own, and that request was granted over Debtor's objection. (Dkt. #35). Debtor subsequently filed a sur-reply, reiterating her reliance upon case law from this district and others supporting her interpretation of the statutory requirements. (Dkt. #42). The court heard oral arguments on March 20, 2018 ("Hearing"). Having reviewed the written submissions and hearing transcript, the court is now prepared to rule on whether the proposed plan meets the requirements of §§ 1325 and 1326.

## JURISDICTION

This court has jurisdiction pursuant to 28 U.S.C § 1334(b) and 28 U.S.C. § 151. Matters relating to confirmation of a plan are core proceedings under 28 U.S.C. § 157(b)(2)(L).

## DISCUSSION

At issue in this case is the meaning of language in 11 U.S.C. § 1325(a)(5)(B), which mandates the terms that a plan must provide if the holder of an allowed secured claim objects to its proposed treatment. Specifically, the parties dispute the effect of § 1325(a)(5)(B)(iii) which states that the court shall confirm a plan that provides as follows:

(I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and

(II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan;

---

[3] Bankruptcy Rule 8017 allows amicus briefs to be filed before the *district court or BAP in bankruptcy appeals.*

3

Ford argues that the statute, as written, clearly requires that monthly periodic payments distributed post-confirmation must be equal throughout duration of the plan, at least until the claim is paid in full. In this case, Ford calculated that a set payment of $480 per month would adequately protect its interest and pay off the claim. (Hearing Tr. at 9:18-21, Dkt #43). Debtor concedes that Ford is entitled to equal monthly payments, but maintains that the statute is silent as to when those must begin. As such, she urges the court to consider the impact of 11 U.S.C. § 1326(b)(1), requiring payment of priority administrative claims "[b]efore or at the time of each payment to creditors under the plan," and construe the two provisions together as allowing adequate protection payments to Ford that cover depreciation of the vehicle—$275 per month—and once the debt to counsel is paid in full, commencing equal payments on Ford's secured claim—$741 per month.[4] Ultimately, the Debtor seeks to prioritize payments to her attorney and Ford objects that she cannot do so at the expense of a secured creditor. Resolution of this dispute depends upon *who* is entitled to be paid *what* and *when* under the applicable provisions of §§ 1325 and 1326.

Courts are divided on the question of statutory interpretation of § 1325(a)(5)(B), and, not surprisingly, the parties urge this court to follow the cases supporting their respective positions. Debtor points to *In re Marks*, 394 B.R. 198 (Bankr. N.D. Ill. 2008), a case from this district decided by my colleague Judge Jacqueline Cox, that adopted the slight majority viewpoint. Judge Cox concluded after reviewing the conflicting case law that:

> Requiring [the lender] to receive its claim value payment beginning with the first payment and throughout the duration of the plan conflicts with the provision of the Code requiring priority treatment of administrative expenses. Further, the dangers of abuse that precipitated the amendments to § 1325 are not inherent under this interpretation of the statute. Since [the lender] is receiving adequate protection payments in the amount of depreciation while the administrative claims are covered, it will not be left holding the bag

---

[4] Debtor has never stated exactly how many months Ford would have to wait for the step-up in payments. Based on very rough math, and assuming the Debtor has made all plan payments thus far, the court estimates approximately nine months.

4

for any loss in value of the collateral if the plan should later fail or become converted to a chapter 7 case. [The lender] is not injured by the plan so long as it is receiving these monthly payments equal to the collateral's depreciation. Note that the Debtor is required to make equal monthly payments to the plan by § 1325(a)(5)(B)(iii), not to a particular creditor. Moreover, the trustee is not obligated to disburse equal monthly payments to the creditor because of the trustee's duty to pay priority claims.

*Id.* at 204-05. *Marks* relied heavily on a line of cases holding that "secured claims may be deferred until later in the plan so long as the secured creditor is provided adequate protection payments in the interim." *Id.* at 203; accord *In re DeSardi*, 340 B.R. 790, 806 (Bankr. S.D. Tex. 2006); *In re Erwin*, 376 B.R. 897, 901 (Bankr. C.D. Ill. 2006); *In re Hill*, 397 B.R. 259, 269 (Bankr. M.D. N.C. 2007). Other courts since *Marks* have continued to find that reasoning persuasive. *See In re Butler*, 403 B.R. 5, 16 (Bankr. W.D. Ark. 2009) ("[t]he requirement to pay administrative fees—either in full before or concurrent with payments to creditors—when read in conjunction with the requirement to make adequate protection payments within 30 days of filing dictate that equal monthly payments may not necessarily occur until some time after confirmation"); *In re Brennan*, 455 B.R. 237, 240 (Bankr. M.D. Fla. 2009) ("[t]he bankruptcy code does not require payments on allowed secured claims begin at month one, or at confirmation, and it expressly requires the accelerated payment of attorneys' fees"). *Marks* indicated the appropriate method for calculating adequate protection payments in this district is "by looking at the N.A.D.A. Guide to compare the value of the collateral at the time of filing the petition with the value of the collateral in the month immediately after filing." 394 B.R. at 202. Debtor here concludes that figure is $275 each month. Ford does not necessarily dispute this method of computation for pre-confirmation adequate protection, but both sides agree $275 monthly would not be enough to complete payment of the claim over the life of the plan. (Hearing Tr. at 7:7-24; Dkt #43).

In contrast, Ford points to *In re Sanchez*, 384 B.R. 574 (Bankr. D. Or. 2008), where that court acknowledged the majority view promoted a "salutary goal" of paying debtor's attorney fees

5

in Chapter 13 cases on an expedited basis, but nonetheless rejected those holdings as "strained interpretations" of the statute. *Id.* at 577. *Sanchez* construed "during the period of the plan" in subsection II of § 1325(a)(5)(B)(iii) to mean that "equal monthly payments must commence with confirmation and last until the secured claim is paid in full." *Id.* at 578. Furthermore, in reliance on *In re Denton*, 370 B.R. 441, 445-46 (Bankr. S.D. Ga. 2007), *Sanchez* distinguished pre-confirmation adequate protection under § 1326(a)(1)(C) and equal monthly amounts under subsection I of § 1325(a)(5)(B)(iii), in holding that debtors could not simply extend adequate protection payments beyond confirmation "when the monthly amount is less than the amount of payment on the allowed secured claim under the plan." *Sanchez*, 384 B.R. at 579. *See also In re Willis*, 460 B.R. 784, 791 (Bankr. D. Kan. 2011) (characterizing the majority's "effort to differentiate post confirmation payments on secured claims and create tiered payment amounts" as an "elegant accommodation" not authorized by the Code).

After reviewing the plain language of the statute and the thoughtful reasoning of the courts that have already considered this issue, this court respectfully disagrees with the rationale of *Marks* and the majority. This court cannot harmonize the conclusions reached by those courts with the statutory provisions. First, with respect to priority treatment of administrative expenses, there is no basis in the statute for finding that § 1326(b)(1) trumps the right of an objecting secured creditor to equal payments under § 1325(a)(5)(B). All § 1326(b) establishes is that "priority claims such as attorney's fees may be paid concurrently with non-priority claims." *In re Romero*, 539 B.R. 557, 560 (Bankr. E.D. Wis. 2015). "Nothing in § 1326(b)(1) carves out an exception to the requirement mandated by § 1325(a)(5)(B)(iii)(I) that [secured claims] be paid in equal monthly amounts commencing at the effective date—confirmation—of the plan." *In re Kirk*, 465 B.R. 300 307 (Bankr. N.D. Ala. 2012). Therefore, in instances where both §§ 1325(a)(5)(B) and 1326(b)(1)

6

apply, debtors "need to calculate plan payments sufficient to provide for these payments and for payment of attorney fees and other administrative expenses." *In re Williams*, 385 B.R. 468, 475 (Bankr. S.D. Ga. 2008). *See also Kirk*, 465 B.R. at 308 (a confirmable plan "should be structured so that payments to the attorney neither reduce nor delay the required equal monthly payments to secured claimholders").

Next, as to the adequate protection requirement, Debtor can certainly propose to pay the same monthly amount for pre-confirmation adequate protection and on the secured claim, as she did here with the original November 6, 2017 plan, but subsections I and II of § 1325(a)(5)(B)(iii) are joined by "and," which indicates *both provisions* must be satisfied. In other words, "the plan must provide for [objecting secured] creditors to receive equal monthly payments beginning with the first distribution post-confirmation *and* the payment amount must be sufficient to provide adequate protection during the period of the plan." *Williams*, 385 B.R. at 375. As such, the Debtor cannot merely continue pre-confirmation adequate protection under § 1326(a)(1)(C) as post-confirmation payments under § 1325(a)(5)(B)(iii), if doing so will lead to unequal payments on a secured claim.

Finally, this court can find no support for the holding in *Marks, supra,* and *Erwin*, 376 B.R. at 902-3, that the term "equal monthly amounts" in § 1325(a)(5)(B)(iii) references payments to the trustee, as opposed to a creditor. More persuasive is the rationale of the *Sanchez* court: "Subsection (I) is part of § 1325(a)(5), which expressly pertains to 'allowed secured claims provided for by the plan.' Thus, subsection (I) refers to distributions by the trustee to creditors under the plan, not the debtor's payments into the plan." *Sanchez*, 384 B.R. at 578; *accord Romero*, 539 B.R. at 559-60 ("[t]he payments required to be in equal monthly amounts are 'periodic payments' of 'property to

7

be distributed pursuant to this subsection' . . . [which] cannot be understood to mean the debtor's payments to the trustee." (citation omitted)).

In sum, because the plan proposes to pay Ford a lesser amount until debtor's attorney's fees are paid in full and Ford has not accepted this treatment, the plan does not comply with § 1325(a)(5)(B)(iii). Accordingly, Ford's objection to confirmation is sustained.

## **CONCLUSION**

Confirmation of the January 19, 2018 plan is denied. Debtor must file an amended plan within 21 days of this opinion.

Dated: April 10, 2018                              ENTER:

*[signature]*
Hon. LaShonda A. Hunt
U. S. Bankruptcy Judge